[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 15, 2005
THOMAS  K. KAHN
CLERK

_____

No. 05-11397
Non-Argument Calendar

_____

D. C. Docket No. 04-00188-CR-19JGG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANTONIO HERNANDEZ-MARTINEZ,
a.k.a. Antonio Martinez-Hernandez,
a.k.a. Antonio Gabone,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(November 15, 2005)

Before DUBINA, BLACK and BARKETT, Circuit Judges.

PER CURIAM:

Appellant Antonio Hernandez-Martinez appeals his 70-month sentence for illegal re-entry into the United States, in violation of 8 U.S.C. §§ 1326(a) and (b). The two issues on appeal are: (1) whether the district court violated Hernandez-Martinez's Fifth and Sixth Amendment rights in enhancing his base offense level, pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(ii), based on his prior conviction for robbery, which was not charged in his indictment or admitted, and (2) whether the district court erred in denying Hernandez-Martinez's motion for a downward departure presented to avoid a sentencing disparity between defendants who are sentenced under the fast-track program[1] and those who have no such program in their districts.

## I.      Enhancement for a Prior Conviction, U.S.S.G. § 2L1.2(b)(1)(A)(ii)

Hernandez-Martinez argues that his sentence is unconstitutional because the court sentenced him based upon facts that were not charged in the indictment, found by a jury, or admitted at the plea colloquy. While he concedes that we have held that *Almendarez-Torres v. United States*, 523 U.S. 224, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (1998) is still valid law, Hernandez-Martinez maintains that its

---

[1]As the First Circuit recently explained, U.S.S.G. § 5K3.1 provides for the application of downward departures in districts that have implemented early disposition or "fast-track" programs. *United States v. Melendez-Torres*, 420 F.3d 45, 52 (1st Cir. 2005). Fast-track programs enable districts to accommodate a large number of immigration cases by allowing district courts to grant up to a four-level downward departure in exchange for the waiver of certain procedural rights by the defendant. *Id.* "[T]hese programs are authorized only when they are clearly warranted by local conditions within a particular district." *Id.*

narrow holding is distinguishable from the facts of his case because (1) he did not admit to his prior robbery conviction, and (2) he did not stipulate that his prior convictions constituted "crimes of violence" or "aggravated felonies." Hernandez-Martinez also contends that we should not apply *Almendarez-Torres* to his case because (1) it has been discredited by the Supreme Court, and (2) our holding in *Jefferson County v. Acker*, 210 F.3d 1317, 1320 (11th Cir. 2000), concerning when we should follow Supreme Court cases that are distinguishable, establishes that we are free to apply the reasoning of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), to his case. Hernandez-Martinez further asserts that, because the court added three points to his criminal history score based on its finding that he committed the instant offense while on supervised release and within two years of his release from imprisonment, his sentence violated *United States v. Booker*, 543 U.S., 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005) and his constitutional rights.

Hernandez-Martinez properly preserved his claim in the district court by objecting under *Apprendi*, *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), and *Booker* to the use of his prior conviction to enhance his sentence. *See United States v. Dowling*, 403 F.3d 1242, 1245-46 (11th Cir.), *cert. denied*, ___ S. Ct. ___, (U.S. Oct. 11, 2005) (No. 05-6234) (explaining the

3

ways an appellant can preserve a *Booker* claim). Since Hernandez-Martinez timely raised a *Booker* objection in the district court, we review the claim on appeal *de novo*, but reverse only for harmful error. *See United States v. Paz*, 405 F.3d 946, 948 (11th Cir. 2005).

Under U.S.S.G. § 2L1.2(b)(1)(A)(ii), a defendant's base offense level may be increased by 16 where the defendant has been previously deported after "a conviction for a felony that is . . . a crime of violence . . . ." The commentary to § 2L1.2 includes robbery within the definition of "crime of violence." U.S.S.G. § 2L1.2, comment. (n.1(B)(iii)).

In *Almendarez-Torres*, the Supreme Court held that the government need not allege in its indictment, and need not prove beyond a reasonable doubt, that a defendant had prior convictions in order for a district court to use those convictions for purposes of enhancing a sentence. *Almendarez-Torres*, 523 U.S. at 247, 118 S. Ct. at 1233. The Supreme Court declined to revisit *Almendarez-Torres* in *Apprendi*, holding that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 120 S. Ct. at 2362-63. In *Booker* the Supreme Court recently reaffirmed its holding in *Apprendi*. *Booker*, 543 U.S. at ____, 125 S. Ct. at 756. We have

4

clarified that the Supreme Court's decision in *Almendarez-Torres* "was left undisturbed by *Apprendi*, *Blakely*, and *Booker*." *United States v. Shelton*, 400 F.3d 1325, 1329 (11th Cir. 2005). Moreover, we have noted that, while recent decisions, including *Shepard v. United States*, 544 U.S. ____, 125 S. Ct. 1254, 161 L. Ed. 2d 205 (2005), may arguably cast doubt on the future prospects of *Almendarez-Torres*, the Supreme Court has not explicitly overruled *Almendarez-Torres*, and, as a result, we must follow *Almendarez-Torres*. *United States v. Camacho-Ibarquen*, 410 F.3d 1307, 1316 n.3 (11th Cir.), *cert. denied*, ___ S. Ct. ___ (U.S. Oct. 11, 2005) (No. 05-6178).

In *Acker* we explained that where "the facts of a gravely wounded Supreme Court decision do not line up closely with the facts before us--if it cannot be said that decision "directly controls" our case--then, we are free to apply the reasoning in later Supreme Court decisions to the case at hand. We are not obligated to extend by even a micron a Supreme Court decision which that Court itself has discredited." *Acker*, 210 F.3d at 1320.

Despite Hernandez-Martinez's argument to the contrary, whether his case is factually distinguishable from *Almendarez-Torres* is irrelevant because Hernandez-Martinez was sentenced under an advisory Guidelines scheme and, therefore, the court properly could have made factual findings that were not admitted to, found

5

by a jury, or charged in the indictment. *See United States v. Chau*, No. 05-10640, ___ F.3d ___ (11th Cir. Sept. 27, 2005) (holding that nothing in *Booker* or the Constitution prohibits a court from "making factual determinations that go beyond a defendant's admissions" in an advisory Guidelines system). Hernandez-Martinez was sentenced on February 28, 2005, after the Supreme Court explained in *Booker* that the Guidelines were advisory and, furthermore, the district court repeatedly stated that it was aware of the advisory nature of the Guidelines. *Booker*, 543 U.S. at ____, 125 S. Ct. at 756.

Additionally, even assuming that the court used facts other than Hernandez-Martinez's prior convictions in calculating his criminal history score, there could be no constitutional error because the court sentenced him pursuant to advisory Guidelines. Therefore, Hernandez-Martinez's arguments are without merit because (1) we have explicitly held that *Almendarez-Torres* is binding precedent, and (2) even if we were not obligated, under *Acker*, to follow *Almendarez-Torres*, the fact that the court sentenced Hernandez-Martinez under an advisory Guidelines scheme precludes a finding of any constitutional *Booker* error.

## II.    Downward Departure

Hernandez-Martinez argues on appeal that the district court improperly refused to grant his motion for a downward departure because the court based its

decision on his criminal history, which is a fact that courts in districts employing

fast-track programs do not consider when sentencing defendants similarly situated

to Hernandez-Martinez. He contends that the result of this sentencing disparity is

contrary to the purpose of the Guidelines that similarly situated defendants should

receive similar sentences throughout the districts. He further asserts that the

court's refusal to depart violated his right to equal protection of the laws, under the

Fifth Amendment, because other similarly situated defendants are sentenced

pursuant to the fast-track program simply because of the location of their arrest.

Finally, he maintains that, whether under strict scrutiny or rational basis review,

the sentencing disparity violated his constitutional rights.

Generally, we lack jurisdiction to review a district court's denial of a motion

for a downward departure made pursuant to the Guidelines, unless the court

misapprehended its authority to apply the departure. *United States v. Winingear*,

422 F.3d 1241, 1245 (11th Cir. 2005). Thus, to the extent Hernandez-Martinez's

motion was made as a traditional departure motion under the Guidelines[2], the court

here did not misapprehend its authority to depart, as evidenced by the court's

explanation of the factors on which it based its conclusion that a departure was not

warranted in Hernandez-Martinez's case. However, we may conduct a *de novo*

---

[2]The court may depart from the guideline range under § 5K2 for circumstances not adequately taken into consideration in formulating the guidelines. *See* U.S.S.G. § 5K2(a).

review of an otherwise final sentence if the sentence was imposed in violation of the law. 18 U.S.C. § 3742(a)(1); *United States v. Manella*, 86 F.3d 201, 203 (11th Cir. 1996). Because Hernandez-Martinez argues that his sentence violated his constitutional rights, we have jurisdiction, under 18 U.S.C. § 3742(a)(1), to determine whether the sentence was imposed in violation of the law.

On the facts here, and assuming without deciding, as the district court did, that Hernandez-Martinez would have been eligible for sentencing under a fast-track program or should be considered for a departure to eliminate any disparity, the factors in his case suggest that a downward departure is still not warranted. Hernandez-Martinez had twice before been deported from the United States, had committed burglary and robbery, and had committed the instant offense while he was on supervised release and within two years of his last release from prison. Based on Hernandez-Martinez's criminal history, then, a downward departure was not appropriate, even under a fast-track program.

For the foregoing reasons, we conclude that the district court did not violate Hernandez-Martinez's constitutional rights in enhancing his sentence based on his prior robbery conviction nor did the court err in denying his motion for a downward departure. Accordingly, we affirm Hernandez-Martinez's sentence.

**AFFIRMED.**

8