[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
February 24, 2005
THOMAS K. KAHN
CLERK

No. 03-15315

_____

D. C. Docket No. 02-00020 CR-3-RV

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARCO D. DUNCAN,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Northern District of Florida

_____

**(February 24, 2005)**

**ON PETITION FOR REHEARING**

Before ANDERSON and BIRCH, Circuit Judges, and LAND*, District Judge.

_____

*Honorable Clay D. Land, United States District Judge for the Middle District of Georgia, sitting
by designation.

ANDERSON, Circuit Judge:

The panel's opinion in this case issued on August 18, 2004, and was published in 381 F.3d 1070 (11th Cir. 2004). A petition for rehearing en banc was filed. We construe it also as a petition for rehearing by the original panel. We now grant panel rehearing, vacate the previous opinion published in 381 F.3d 1070, and substitute in its stead the instant opinion. In this opinion, we focus on Duncan's sentencing argument, reviewing for plain error in light of the Supreme Court's decision in United States v. Booker, 542 U.S. __, 125 S. Ct. 738 (2005). We conclude that Duncan cannot overcome the third prong of plain error analysis because he cannot show an error that affected his substantial rights. See United States of America v. Rodriguez, ___F.3d.____, 2005 WL 272952 (11th Cir. Feb. 4, 2005).

In his initial brief on appeal, Duncan argued that the jury and not the district court judge should have made the determination of the type and quantity of drugs involved in a drug conspiracy for the purpose of sentencing.[1] After the initial

_____

[1] In his initial brief, Duncan made this Apprendi-type argument only with respect to the drug type issue, and not with respect to the other two enhancements referenced in any of the briefs, i.e., the firearm and role enhancements. Accordingly, he is not entitled to have this Court entertain the argument with respect to those other two enhancements. See United States v. Levy, 379 F.3d 1241(11th Cir. 2004) (holding that defendant waived his Blakely claim as issue on appeal by failing to raise it in his initial brief); United States v. Nealy, 232 F.3d 825, 830 (11th Cir. 2000) ("Defendant abandoned the [Apprendi] indictment issue by not raising the issue in his initial brief."); United States v. Ford, 270 F.3d 1346, 1347 (11th Cir. 2001) ("[O]ur well

2

briefing in this case, the Supreme Court decided Blakely v. Washington, 542 U.S. ___, 124 S. Ct. 2531 (2004), and accordingly, we ordered supplemental briefing on the issue. In Blakely, the Supreme Court applied the rule set out in Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000), and held that the imposition – based solely on the sentencing judge's factual findings – of a sentencing enhancement above the range indicated in the State of Washington's Sentencing Reform Act violated Blakely's Sixth Amendment rights because the facts supporting the findings were neither admitted by Blakely nor found by a jury. In our initial opinion, we reviewed Duncan's sentence for plain error and concluded that the district court could not have committed "plain" error by failing to apply Blakely in the context of the Federal Sentencing Guidelines ("Guidelines").

After our initial opinion, the Supreme Court decided United States v. Booker, 542 U.S. at __, 125 S. Ct. 738 (2005). In Booker, the Supreme Court issued two separate majority opinions. Id. First, Justice Stevens wrote for the Court and held that the rule announced in Blakely applied to the Guidelines.

established rule is that issues and contentions not timely raised in the briefs are deemed abandoned."); United States v. Curtis, 380 F.3d 1308 (11th Cir. 2004) (declining to permit a supplemental brief raising a Blakely issue for the first time, following Nealy and Ford). Moreover, even in his supplemental brief Duncan focuses on the drug type finding, barely mentioning the other two enhancements, and even that mention is both conclusory and vague. We readily conclude that Duncan has abandoned any Blakely challenge except with respect to the drug type.

Booker, 542 U.S. __, 125 S. Ct. at 745.  He based his opinion on the premise that the Guidelines were mandatory and imposed binding requirements on all sentencing judges.  Id. at ___, 125 S. Ct. at 749.   Second, and in light of Justice Stevens' holding,  Justice Breyer wrote for the Court and invalidated two provisions of the Sentencing Reform Act of 1984 that had the effect of making the Guidelines mandatory.  Id. at ___, 125 S.Ct at 756.  The Court instructed that both holdings – the Sixth Amendment holding and the remedial interpretation of the Sentencing Act – should be applied to all cases on direct review.  Id. at 769.  We requested and received supplemental briefs addressing the effect of the Supreme Court's decision in Booker.  We now consider Duncan's claim in light of Booker.

On February 20, 2002, the appellant, Marco D. Duncan, and several other co-defendants were charged with conspiracy to distribute and to possess with intent to distribute five kilograms or more of cocaine and fifty grams or more of cocaine base, pursuant to 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii), and 21 U.S.C. § 846.  The indictment also alleged a criminal forfeiture count.  Prior to trial, Duncan filed a motion to suppress all evidence obtained from the search of his vehicle at the time of his arrest.  The district court denied the motion.

Duncan's trial commenced on July 21, 2003.  The jury found Duncan guilty as charged, and by a special verdict found beyond a reasonable doubt that the

conspiracy involved five kilograms or more of cocaine, but found that the government failed to prove beyond a reasonable doubt that the conspiracy involved fifty grams or more of cocaine base. At sentencing, the district court calculated Duncan's base offense level by finding that a portion of cocaine powder had been converted into 12.24 kilograms of cocaine base, or crack. Had Duncan's base offense level been calculated solely using the jury's special verdict, his base offense level would have been 32 instead of 38 under the Guidelines.

However, the district court set the base offense level at 38 stating, "I certainly find from the evidence, by a preponderance at least, and actually more than that, that Mr. Duncan knew and it was reasonably foreseeable to him that it was being converted into crack cocaine, most of it converted, and sold in that form." On October 10, 2003, the district court sentenced Duncan to life imprisonment[2] and ordered forfeiture in the amount of $340,000.[3] Duncan timely appealed.

Duncan raised various arguments with respect to his conviction, sentence, and forfeiture. After oral argument and careful consideration, we reject without

---

[2]     In light of Duncan's criminal history, category IV, and with the other enhancements, see for example note 1, supra, the Guidelines indicated a life sentence.

[3]     A bifurcated forfeiture proceeding was conducted, and the jury returned a forfeiture verdict of $340,000 against the defendant.

need for further discussion the following arguments asserted by Duncan on appeal: (1) that the district court erred by denying his motion to suppress the evidence obtained from the April 21, 2003 search; (2) that the district court erred by enhancing his sentence two levels for the possession of a firearm; (3) that the district court erred by enhancing his sentence four levels based upon his role in the offense;[4] and (4) that the forfeiture count of the indictment failed to set forth with the specificity required by the Fifth Amendment Due Process Clause the property that the Government claimed was obtained as a result of the alleged conspiracy.

Duncan's remaining argument on appeal is that the special verdict by the jury, finding that the conspiracy involved only cocaine powder, precluded the district court from sentencing Duncan based, in part, on its finding that the offense involved 12.24 kilograms of cocaine base, or crack. Duncan failed to raise this issue in the district court at any time, either during the trial or at sentencing. Although Duncan did object below to the setting of the base offense level pursuant to a finding of cocaine base instead of cocaine powder, his argument below was limited to a sufficiency of the evidence argument that it was impossible to determine from the evidence what quantity of the cocaine powder had been

---

[4]    With respect to these other sentencing arguments, Duncan also failed to raise an Apprendi-type objection in the district court or in his initial brief on appeal. See note, 1, supra.

6

cooked into crack. That Duncan's objection below was limited to the sufficiency of the evidence indicating cocaine base and did not include any type of objection based upon the Sixth Amendment is clear from his written objections to his Presentence Investigation Report ("PSI") as well as the transcript from the sentencing hearing. Therefore, because Duncan failed to raise a Sixth Amendment argument below, our review is limited to determining whether setting the base offense level based on a judicial finding of cocaine base constitutes plain error in light of the Supreme Court's holding in Booker. See United States v. Candelario, 240 F.3d 1300, 1308 (11th Cir. 2001) (noting that where a defendant did not make an Apprendi-based objection before the district court at sentencing, review is limited to plain error review, and that a sufficiency of the evidence objection is not a constitutional objection); United States v. Sanchez, 269 F.3d 1250, 1280 (11th Cir. 2001) (en banc) (applying plain error review where Apprendi claim raised for the first time on appeal). The fact that Booker was decided subsequent to the judgment in the district court does not alter our use of the plain error standard. See United States v. Cotton, 535 U.S. 625, 122 S. Ct. 1781 (2002) (applying plain error to an Apprendi claim where Apprendi was decided while the appeal was pending in the Fourth Circuit); Johnson v. United States, 520 U.S. 461, 117 S. Ct. 1544 (1997) (applying plain error review to the issue of whether the materiality of

a false statement was an element of an offense such that it had to be submitted to a jury where the argument was first raised on appeal and was based upon a case decided by the Supreme Court after the defendant's conviction but before her appeal). Indeed, the Supreme Court in Booker expressly directed appellate courts to "apply ordinary prudential doctrines," including plain error, in conducting review of Booker errors. Booker, 542 U.S. __, 125 S. Ct. at 769.

We have discretion to correct an error under the plain error standard where (1) an error occurred, (2) the error was plain, (3) the error affected substantial rights, and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings. United States v. Olano, 507 U.S. 725, 732-36, 113 S. Ct. 1770, 1777-79 (1993).

In United States v. Rodriguez, we applied plain error analysis in light of Booker to a claim that the defendant's sentence violated his Fifth and Sixth Amendment rights because it was based on a judge's finding of facts that were neither charged in an indictment nor proven to a jury. __ F.3d. __, 2005 WL 272952 (11th Cir. Feb 4, 2005). The Rodriguez opinion stated that, after Booker, a sentence enhancement based on a fact, other than a prior conviction, found solely by the judge in a mandatory guideline system met the first and second prongs of the plain error test. Id. at *7. The court stated that the error was not that

8

there were "extra-verdict enhancements" that led to an increase in the defendant's sentence, but rather that those enhancements were applied in a mandatory guideline system. Id. at *8.

The court in Rodriguez held that the defendant in that case could not overcome the third prong of the plain error test because he could not show that the error – applying the Guidelines as mandatory instead of as advisory – "affected substantial rights." Id. at *10. The court stated that for an error to have "affected substantial rights," it must have affected the outcome of the district court proceedings. Id. at *7 (citing United States v. Cotton, 535 U.S. at 632, 112 S. Ct. at 186). Applying the third prong, the court asked "[w]hether there is a reasonable probability of a different result if the guidelines had been applied in an advisory instead of binding fashion by the sentencing judge in this case." Id. at *9. The court stated that it did not know what the result would have been if the sentencing judge had applied the Guidelines in an advisory manner. Id. The court emphasized that the defendant bore the burden of persuasion with respect to prejudice, and that where the effect of an error was uncertain, the defendant could not meet his burden because he could not show a reasonable probability that the result would have been different but for the error. Id. at *10 (citing United States v. Jones, 527 U.S. 373, 394-95, 119 S. Ct. 2090, 2105 (1999)).

9

Duncan argues that the error committed in his case is that the district court imposed a sentence greater than the maximum authorized by the facts found by the jury alone, violating the principle announced in <u>Booker</u>. Duncan states that the facts found by the jury authorized the judge to apply a sentence within the range of an offense level of 32 in the Guidelines, and the district court committed error by imposing a sentence greater than what is authorized by offense level 32. Duncan concludes that the sentencing court's error substantially affected his rights because the sentence imposed exceeded that which is authorized by an offense level 32 in the Guidelines.

As Rodriguez suggests, Duncan's argument misstates the error committed by the sentencing judge. Id. at *8 ("The error that was committed in pre-Booker sentencing, like that which occurred in this case, is not that there were extra-verdict enhancements. . . . The error is that there were extra-verdict enhancements used in a mandatory guidelines system."). Rodriguez explains how we know that the same enhancements made in a non-mandatory Guidelines system are constitutionally permissible, and thus how we know that the error was the failure to treat the Guidelines as advisory:[5]

_____

[5]     Justice Stevens acknowledged that there would have been no Sixth Amendment constitutional violations in the cases before them if the Guidelines were advisory. "Indeed, everyone agrees that the constitutional issues presented by these cases would have been avoided

10

One reason is that Justice Stevens' majority opinion in Booker explicitly tells us that: "If the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment." Booker, 125 S. Ct. at 750; id. at 764 (Breyer, J., maj.op.) ("[W]ithout this provision – namely the provision that makes the relevant sentencing rules mandatory and imposes binding requirements on all sentencing judges – the statute falls outside the scope of Apprendi's requirement." (internal quotation omitted)).

The other reason we know that the use of extra-verdict enhancements in a non-mandatory guidelines system is not unconstitutional is that the other Booker majority opinion, the one authored by Justice Breyer, specifically provides for extra-verdict enhancements in all future sentencings. Id. at 764-65. The Court specifically held that the guidelines system was constitutional once two parts of the Sentencing Reform Act were excised: the part in 18 U.S.C. § 3553(b)(1) making the guidelines result binding on the sentencing court; and the part in § 3742(e) requiring de novo review of sentences on appeal. Id. at 764.

Id. at *9.

Necessarily implied in the Rodriguez analysis is the fact that appellate

entirely if Congress had omitted from the SRA the provisions that make the Guidelines binding on district judges; it is that circumstance that makes the Court's answer to the second question presented possible. For when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant." 542 U.S. at ___, 125 S. Ct. at 750.

courts should apply retroactively <u>both</u> <u>Booker</u> holdings.[6]  Indeed, the Opinion of the Court announced by Justice Breyer expressly mandates this.  542 U.S. __, 125 S. Ct. at 769 ("As these dispositions indicate, we must apply today's holdings – both the Sixth Amendment holding and our remedial interpretation of the Sentencing Act – to all cases on direct review.").  In the same breath, Justice Breyer directs appellate courts to apply "ordinary prudential doctrines," including the plain error rule.  <u>Id.</u>  Thus, <u>Rodriguez</u>' plain error analysis faithfully follows these Supreme Court directions.

When Justice Breyer's opinion is retroactively applied on direct review,  the Guidelines are deemed to have been "effectively advisory." <u>Booker</u>, 542 U.S. __, 125 S. Ct. at 757.  This means that the various top ranges of the Guidelines are no longer binding, and therefore, no longer constitute "little relevant maximums." This leaves as the only maximum sentence the one set out in the United States Code.  Justice Breyer's opinion making the Guidelines advisory essentially changes what sentence is authorized by a jury verdict – from the sentence that was authorized by mandatory Guidelines to the sentence that is authorized by the U.S. Code.

---

[6]     In identifying the relevant error, the <u>Rodriguez</u> panel applied <u>both</u> <u>Booker</u> holdings retroactively.

In Duncan's case, the U.S. Code authorizes a sentence of up to life imprisonment based on the jury's finding that he possessed at least 5 kilograms of cocaine powder. See 21 U.S.C. § 841(b)(1)(A)(ii)(I). Duncan's life sentence, of course, falls within this maximum. And this life sentence does not run afoul of Justice Stevens' holding, which also has to be applied retroactively. When Justice Breyer's holding is applied retroactively, the maximum sentence authored by Duncan's jury verdict is life; thus, Duncan's life sentence does not violate Justice Stevens' holding that "[a]ny fact . . . which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." Booker, 542 U.S. __, 125 S. Ct. at 756.

Duncan essentially asks this court to apply Justice Stevens' opinion in Booker retroactively, but refuse to apply Justice Breyer's opinion in Booker retroactively. Yet, in Booker, the Supreme Court expressly stated that both holdings should be applied to cases on direct review. 542 U.S. __, 125 S. Ct. at 769. The only error that remains after applying both Booker holdings retroactively is the fact that the judge perceived that the Guidelines were mandatory, when in fact they are now deemed to have been advisory. Rodriguez, 2005 WL 272952 at *8.

13

Like the defendant in Rodriguez, Duncan can meet the first two prongs of plain error analysis. The sentencing judge applied the Guidelines as if they were mandatory, and that constitutes error which is "clearly contrary to the law at the time of appeal" after Booker. Id. at *7 (citing Johnson v. United States, 520 U.S. 461, 468, 117 S. Ct. 1544, 1549 (1977)). Duncan, however, cannot meet the third prong of plain error review because he cannot show that this error affected his substantial rights. In his brief addressing Booker, Duncan acknowledges that "[i]t is simply impossible to determine whether the district court would have imposed the same sentence under a discretionary Guideline scheme." As indicated by Rodriguez, Duncan bears the burden of persuasion with respect to prejudice. Id. Duncan does not point to anything indicating "a reasonable probability of a different result if the guidelines had been applied in an advisory instead of binding fashion," and therefore cannot meet his burden. Id. at *9.

The only legal issue that distinguishes the sentence imposed in Duncan's case from the sentence imposed in Rodriguez is that the jury in Duncan's case issued a special verdict that found Duncan guilty of conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine, but did not find him guilty of the same charge with respect to fifty grams or more of cocaine base. The district court enhanced Duncan's sentence based, in part, on a finding that

14

some of the cocaine powder had been converted into over 12 kilograms of cocaine base, a finding that the jury had declined to make beyond a reasonable doubt. This does not change our analysis.

Our Circuit's precedent uniformly states, "[r]elevant conduct of which a defendant was acquitted nonetheless may be taken into account in sentencing for the offense of conviction, as long as the government proves the acquitted conduct relied upon by a preponderance of the evidence." United States v. Barakat, 130 F.3d 1448, 1452 (11th Cir. 1997) (citing United States v. Watts, 519 U.S. 148, 153, 117 S. Ct. 633, 636 (1997); United States v. Frazier, 89 F.3d 1501, 1506 (11th Cir. 1996); United States v. Averi, 922 F.2d 765, 766 (11th Cir. 1991)). In United States v. Watts, the Supreme Court held that the Double Jeopardy Clause permitted a court to consider acquitted conduct in sentencing a defendant under the Guidelines because "consideration of information about the defendant's character at sentencing does not result in 'punishment' for any offense other than the one of which the defendant was convicted." 519 U.S. 148, 155, 117 S. Ct. 633, 636 (1997) (citing Witte v. United States, 515 U.S. 389, 401, 115 S. Ct. 2199, 2207 (1995)). Booker does not suggest that the consideration of acquitted conduct violates the Sixth Amendment as long as the judge does not impose a sentence that

exceeds what is authorized by the jury verdict.[7] Thus, nothing in Booker erodes our binding precedent. Booker suggests that sentencing judges can continue to consider relevant acquitted conduct when applying the Guidelines in an advisory manner, "[f]or when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant." Booker, 542 U.S. at __, 125 S. Ct. at 750. Here, applying Justice Breyer's opinion retroactively, we conclude that the jury verdict authorized life imprisonment. Therefore, we conclude that it was not error for the sentencing judge to find a fact that had been acquitted by the jury when determining Duncan's sentence.

We are aware of the opinions recently issued by the Fourth, Sixth, and Ninth Circuits stating that defendants in Duncan's position met plain error review and remanding their cases for resentencing in light of Booker. See United States v. Ameline, __F.3d__, 2005 WL 350811 (9th Cir. Feb. 10, 2005) (reviewing Booker issue sua sponte and holding, upon rehearing, that defendant's sentence violated Booker because district court applied Guideline enhancements based on judicial

---

[7] In his Booker opinion, Justice Stevens discusses Watts, and concludes that it "is not inconsistent with today's decision." Booker, 542 U.S. at ___, 125 S. Ct. at 754. Justice Stevens, however, acknowledges that the case did not involve "any contention that the sentencing enhancement had exceeded the sentence authorized by the jury verdict in violation of the Sixth Amendment." Id.

16

factfinding that went beyond the facts admitted by defendant in his plea); United States v. Oliver, __F.3d__, 2005 WL 233779 (6th Cir. Feb. 2, 2005) (finding the district court plainly erred by increasing defendant's sentence pursuant to the Guidelines based upon the judge-found fact of defendant's pretrial flight from a residential halfway house); United States v. Hughes, __ F.3d__, 2005 WL 147059 (4th Cir. Jan.24, 2005) (vacating and remanding defendant's pre-Booker sentence under plain-error review because district court had not yet had an opportunity to impose a sentence under an advisory guideline system). We decline to follow those opinions for several reasons. First, we are bound to follow this Circuit's precedent in Rodriguez. Smith v. GTE Corp., 236 F.3d 1292, 1300 n.8 (11th Cir. 2001) ("Under the well-established prior panel precedent rule of this Circuit, the holding of the first panel to address an issue is the law of this Circuit, thereby binding all subsequent panels unless and until the first panel's holding is overruled by the Court sitting en banc or the Supreme Court."). Second, as Rodriguez indicates, those opinions misidentify the Booker error by applying Justice Stevens' opinion retroactively, but failing to apply Justice Breyer's opinion retroactively. Rodriguez, 2005 WL 272952 at *8. Finally, as discussed in Rodriguez, those opinions do not correctly apply plain error analysis because they do not identify or apply the burden of persuasion, and they disconnect the prejudice analysis from

17

the true error that remains after both <u>Booker</u> opinions are applied retroactively. <u>Id.</u> at *11 ("Another way of putting it is that the <u>Hughes</u> reasoning is wrong because it disconnects the error to be remedied on remand from the decision of whether there is to be a remand.").

In <u>United States v. Milan</u>, the Sixth Circuit concluded that <u>Rodriguez</u> is incorrect, and that Milan's rights were "substantially affected" by the <u>Booker</u> error. <u>United States v. Milan</u>, __ F.3d__, 2005 WL 309934 at *6-7(6th Cir. Feb.10, 2005). Our reading of <u>Milan</u> does not detect any criticism of the substance of the plain error analysis in <u>Rodriguez</u>.[8] <u>Id.</u> Rather, <u>Milan</u> seems to have rejected <u>Rodriguez</u> only because the Supreme Court remanded Respondent Booker's case for resentencing. <u>Id.</u> The Sixth Circuit assumed that the Supreme Court considered the plain error analysis in <u>Booker</u>. <u>Id.</u> The Sixth Circuit reasoned that Respondent Booker did not make a Sixth Amendment objection in the district court,[9] and the fact that the Supreme Court remanded his case for resentencing "amounts – at the very least – to a holding that sentencing Booker in a manner that

---

[8]     For example, the <u>Milan</u> panel does not explain the error it apparently sees in <u>Rodriguez</u>' identification of the relevant error, or in its retroactive application of not only Justice Stevens' <u>Booker</u> holding, but also Justice Breyer's.

[9]     It is true that the Seventh Circuit in <u>Booker</u> indicated that Booker had not preserved the error in the district court, although the Seventh Circuit overlooked the plain error issue because the Government had not argued it. <u>United States v. Booker</u>, 375 F.3d 508, 515 (7th Cir. 2004).

violated the Sixth Amendment affected his substantial rights." Id.

With respect, we are not persuaded by Milan for a number of reasons. First, we believe that the Milan opinion misidentifies the Booker error as "[s]entencing a defendant on the basis of judicial fact-finding," id. at *6, which misidentification results from their having applied retroactively only Justice Stevens' Booker holding and their failure to also apply retroactively Justice Breyer's holding. Second, an inference that the Supreme Court implicitly reviewed for plain error, and remanded Booker's case because it affected his substantial rights, seems unwarranted in light of the fact that plain error was not discussed in either of the two Opinions for the Court or in the various dissents. We believe there are more plausible explanations for the Supreme Court's failure to address the plain error issue: it was not argued,[10] and the plain error issue was not encompassed within the questions accepted for certiorari.[11] Finally, applying both decisions retroactively, it is hard to understand how the Court could have applied plain error

---

[10]    The parties' briefs to the Supreme Court in Booker do not address the standard of error that should be applied, and do not urge the Supreme Court to apply a plain error analysis. See Brief for the United States, United States v. Booker, 542 U.S. ___, 125 S. Ct. 738 (2005), 2004 WL 1967056; Brief of Respondent, 2004 WL 1967056. Indeed, contrary to the suggestion in Milan, 2005 WL 309934 at *7, we do not detect in the government's petition for certiorari that the Court was asked to review for plain error. See Pet. for Cert., 2004 WL 1638204.

[11]    See Chandris, Inc. v. Latsis, 515 U.S. 347, 353, 115 S. Ct. 2172, 2182 n.* (1995) (declining to consider a plain error issue raised for the first time in petitioner's opening brief because of the Supreme Court rule providing that "[o]nly the questions set forth in the petition [for certiorari], or fairly included therein, will be considered by the Court.").

19

analysis and reached the conclusion that Booker carried his burden of persuasion on all of the relevant prongs.  We are not willing to assume the Supreme Court implicitly applied plain error analysis in <u>Booker</u> in a manner that would seem to us to be unorthodox.

In addition to arguing that this Court should adopt the reasoning employed by the Fourth, Sixth, and Ninth Circuits, Duncan makes a creative argument based on *ex post facto* principles.  Although Duncan urges the retroactive application of the <u>Booker</u> holding announced by Justice Stevens, he argues that applying Justice Breyer's opinion retroactively violates the Due Process Clause because of the Supreme Court's holding in <u>Bouie v. Columbia</u>, 378 U.S. 347, 353, S. Ct. 1697, 1702  (1964).  In <u>Bouie</u>, the Court held that judicial enlargement of a criminal statute, applied retroactively, violated the Due Process Clause because it was unforeseeable and like an *ex post facto* law.  <u>Id.</u>  The Supreme Court later clarified this doctrine in  <u>Rogers v. Tennessee</u>, 532 U.S. 451, 468, 121 S. Ct. 1693, 1703 (2001), explaining that, while the *Ex Post Facto* Clause does not of its own force apply to the Judicial Branch, the Due Process Clause encompasses the *ex post facto* principle of fair warning.[12]

---

[12]     In this case, Duncan invokes the principle of fair warning as to the consequences of his conduct.  This is one of the four categories identified in <u>Calder v. Bull</u>, 3 Dall. 386, 390 (1798), as implicating the *Ex Post Facto* Clause.  Although <u>Rogers</u> itself involved another <u>Calder</u>

20

Duncan argues that Justice Breyer's remedial interpretation, if applied retroactively, would increase the sentence authorized by the jury's verdict to a maximum of life, and therefore would operate, in light of his life sentence, as an *ex post facto* law in violation of his due process rights. We look to the principles announced in <u>Rogers</u> and examine whether the Supreme Court's <u>Booker</u> opinion would violate the due process principles of fair warning. <u>Rogers</u>, 532 U.S. at 461, 121 S. Ct. at 1699.

At the time Duncan committed his offense, 1999 - 2002, the U.S. Code informed Duncan that if a jury convicted him of possessing at least 5 kilograms of cocaine powder, he was subject to a sentence of life imprisonment. <u>See</u> 21 U.S.C. §841(b)(1)(A)(ii)(I). The Guidelines at the time also informed Duncan that a judge would engage in fact-finding to determine his sentence and could impose up to a sentence of life imprisonment. 18 U.S.C. § 3551 *et seq*. Duncan, therefore, had ample warning at the time he committed his crime that life imprisonment was a potential consequence of his actions. Applying the principles announced in <u>Rogers</u>, Duncan's due process rights cannot be said to have been violated.

category, and although <u>Rogers</u> expressly disavowed any intention to "incorporate jot-for-jot the specific categories of <u>Calder</u>," <u>Rogers</u>, 125 S. Ct. at 1699, Duncan does invoke the fair warning principle articulated in <u>Rogers</u>. We can assume <u>arguendo</u>, without deciding, that <u>Rogers</u>' fair warning principle does apply to retroactive increases of punishment as well as to the core <u>Calder</u> category of retroactive criminalization of conduct.

21

Duncan's argument is similar to the one rejected by the Supreme Court in

Dobbert v. Florida, 432 U.S. 282, 97 S. Ct. 2290 (1977).  After Dobbert's murders,

the Florida death penalty statutes were found unconstitutional under the principles

of Furman v. Georgia, 408 U.S. 238, 92 S. Ct. 2726 (1972).  However, Florida

promptly enacted a new death penalty procedure, under which Dobbert was tried,

convicted and sentenced to death.  Dobbert argued that there was no death penalty

in effect in Florida at the time of his criminal conduct, because the then extant

Florida statute was declared invalid after the time of his criminal conduct, an

argument based on the *Ex Post Facto* Clause.  The Supreme Court readily rejected

Dobbert's argument, holding in relevant part:

> But this sophistic argument mocks the substance of the
> *Ex Post Facto* Clause.  Whether or not the old statute
> would in the future, withstand constitutional attack, it
> clearly indicated Florida's view of the severity of murder
> and of the degree of punishment which the legislature
> wished to impose upon murderers.  The statute was
> intended to provide maximum deterrence, and its
> existence on the statute books provided fair warning as
> to the degree of culpability to which the State ascribed to
> the act of murder.
>
> Petitioner's highly technical argument is at odds with [a
> statement from Chicot County Drainage District v.
> Baxter State Bank , 308 U.S. 371, 60 S. Ct. 317 (1940)].
> Here the existence of the statute served as an "operative
> fact" to warn the petitioner of the penalty which Florida
> would seek to impose on him if he were convicted of

22

first-degree murder. This was sufficient compliance with the *ex post facto* provision of the United States Constitution.

432 U.S at 297-98, 97 S. Ct. at 2300 (citations and quotations omitted).

As in Dobbert, at the time of Duncan's criminal conduct, the recognized state of the law looked to the U.S. Code as establishing maximum sentences – in Duncan's case, a life sentence..[13] Although mandatory Guidelines were in place, the law of this Circuit then recognized the U.S. Code as the source of the maximum sentence. United States v. Sanchez, 269 F.3d 1250, 1268 (11th Cir. 2001). As another Circuit has noted, "In fact, before Blakely was decided, every federal court of appeals had held that Apprendi did not apply to guideline calculations made within the statutory maximum." Simpson v. United States, 376 F.3d 679, 681 (7th Cir. 2004) (citing United States v. Hughes, 369 F.3d 941, 947 (6th Cir. 2004); United States v. Francis, 367 F.3d 805, 820 (8th Cir. 2004); United States v. Jardine, 364 F.3d 1200, 1209 (10th Cir. 2004); United States v. Alvarez, 358 F.3d 1194, 1211-12 (9th Cir. 2004); United States v. Phillips, 349 F.3d 138, 143 (3d Cir. 2003): United States v. Patterson, 348 F.3d 218, 228-29

---

[13] Miller v. Florida, 482 U.S. 423, 107 S. Ct. 2446 (1987), is inapposite. It did not involve a case like the instant case and Dobbert, in which the widely recognized potential sentence remained unchanged from the time of the criminal conduct. Dobbert v. Florida, 432 U.S. 282, 97 S. Ct. 2290 (1977).

(7th Cir. 2003); <u>United States v. Randle</u>, 304 F.3d 373, 378 (5th Cir. 2002);

<u>United States v. Sanchez</u>, 269 F.3d 1250, 1268 (11th Cir. 2001); <u>United States v.</u>

<u>Webb</u>, 255 F.3d 890, 898 (D.C. Cir. 2001); <u>United States v. Angle</u>, 254 F.3d 514,

518 (4th Cir. 2001); <u>United States v. Caba</u>, 241 F.3d 98, 100 (1st Cir.2001);

<u>United States v. Garcia</u>, 240 F.3d 180, 183-84 (2d Cir. 2001)).  We readily

conclude that Duncan had sufficient warning to satisfy the due process concerns

articulated in <u>Rogers v. Tennessee</u>.

We have carefully reviewed each argument asserted on appeal, and for the

foregoing reasons, the judgment, sentence, and forfeiture of the district court are

AFFIRMED.