[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

No. 04-10464

_____

D. C. Docket No. 02-20938-CR-PAS

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 23, 2005
THOMAS K. KAHN
CLERK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

AVONDA VANAY DOWLING,
a.k.a. Avonda Jackson,
etc.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 23, 2005)

Before ANDERSON, PRYOR and HILL, Circuit Judges.

ANDERSON, Circuit Judge:

Appellant Avonda Dowling appeals her conviction of conspiracy to distribute cocaine and her sentence of 240 months' imprisonment. She alleges four grounds for reversal: (1) that there was insufficient evidence to support her conviction for the charged offense; (2) that the district court's alleged mistreatment of her trial counsel in front of the jury violated her right to receive a fair trial; (3) that the district court erred in denying her motion for a new trial on several grounds; and (4) that her sentence is unconstitutional in light of United States v. Booker, 542 U.S. __, 125 S. Ct. 738 (2005). We affirm her conviction. We also affirm her sentence, concluding that her argument based on Booker cannot survive plain error review because Dowling cannot show that the error affected her substantial rights. See United States v. Rodriguez, ___F.3d.____, 2005 WL 272952 (11th Cir. Feb. 4, 2005).

On November 14, 2002, a federal grand jury returned a single-count indictment against Dowling and four co-defendants. The five defendants were charged with conspiring, between 1984 and sometime in 1999, to distribute at least five kilograms of cocaine and at least fifty grams of cocaine base (crack) in violation of 21 U.S.C. § 846. Three of the defendants pleaded guilty, and only Dowling and one co-defendant proceeded to trial.

At trial, the government presented a number of witnesses who testified

concerning their drug transactions with Dowling and the extent and organization of her group, the "Vonda Gang." Several of these witnesses testified that they dealt with Dowling on a weekly basis and routinely purchased large quantities (up to 2 kilograms at a time) of cocaine from her. The government's witnesses also testified to Dowling's involvement in at least two murders in the furtherance of her drug distribution conspiracy. Finally, the government's witnesses testified that Dowling continued to oversee drug distribution operations from prison after her 1998 arrest.

In response, Dowling admitted prior involvement in drug dealing but testified that she had completely withdrawn from the conspiracy in late 1995, therefore entitling her to the protection of the five year statute of limitations applicable to her November 2002 indictment. She denied that she or her associates had ever used violence or the threat of violence to further their conspiracy, and claimed that they had dealt only small amounts of cocaine. She offered the testimony of several witnesses who claimed that she had stopped selling cocaine by 1996. Dowling also personally testified that she was not in possession of any drugs when she was arrested in 1998, that the approximately $8,000 in cash she was carrying at the time was money that she had won gambling with a local bookmaker, and that she had not had any involvement with drug distribution while incarcerated.

In addition, Dowling attacked the government's case by arguing that most of

its witnesses were convicts who had perjured themselves in an effort to obtain sentence reductions for cooperating with law enforcement. She presented witnesses who said they had overheard fellow inmates conspiring to lie about her drug activities in order to obtain favorable treatment. She also presented witnesses who claimed that she had no involvement with drug activities after her incarceration, and she produced two witnesses who claimed to have lied to law enforcement about the extent of her drug activities.

During its rebuttal, the government recalled several of its witnesses to testify that they had not discussed the case with other witnesses. Several of them further testified that Dowling and her associates had tried to influence their testimony. The officer who arrested Dowling in 1998 testified that he seized "a large amount of drugs" from the purse of another passenger in the car as well as over $8,000 in cash and two grams of cocaine from Dowling's purse. He further testified that Dowling admitted that all of the drugs were hers, and that a search of the impounded vehicle yielded numerous small bags of marijuana, cocaine, crack, and heroin.

The jury found Dowling guilty. The jury, however, returned a special verdict regarding the amount of drugs involved, finding that Dowling conspired to distribute less than 500 grams of cocaine and no crack. At sentencing, the district

court applied the Federal Sentencing Guidelines ("Guidelines"). The court found that, according to Dowling's own testimony, the conspiracy involved at least 150 kilograms of powder cocaine and 1.5 kilograms of crack, establishing a base level of 38. The court, expressing some hesitation, then found that the conspiracy involved a murder, and using the applicable cross-reference, increased Dowling's Guideline level to 43. The court finally increased four Guideline levels, based upon its finding that Dowling was the organizer/leader of the conspiracy, and arrived at Guideline level 47. The maximum Guideline level is 43, and the court determined that the sentencing guidelines recommended a sentence of life at this level. The court, however, recognized that the jury's verdict that found Dowling guilty of conspiring to distribute less than 500 grams of cocaine authorized a maximum sentence of only twenty years under the relevant provisions of the United States Code. Accordingly, the court sentenced Dowling to 240 months' imprisonment.

After oral argument and careful consideration, we readily conclude that the first three arguments asserted by Dowling are without merit. First, we find there was more than sufficient evidence to support the jury's verdict of conspiracy to distribute 500 grams of cocaine in light of the extensive amount of testimony against Dowling on this issue, including her own. Second, Dowling's allegation

5

that mistreatment of her trial counsel in front of the jury violated her right to receive a fair trial is not supported by the record. A careful review of the record reveals that, while Dowling is correct that her counsel's closing argument was repeatedly interrupted and he was frequently admonished, those interruptions were clearly warranted and not frivolous. Finally, we find nothing in the record to support Dowling's motion for a new trial, and we reject her argument that the district court erred in denying her motion.

Dowling's final claim, that her sentence is unconstitutional in light of United States v. Booker, 542 U.S. __, 125 S. Ct. 738 (2005), requires a more detailed analysis. In sentencing Dowling, the district court, like nearly all sentencing courts at the time, applied the Federal Sentencing Guidelines as mandatory. After the Supreme Court's opinion in Booker, we know that a mandatory application of the Guidelines can violate a defendant's Sixth Amendment rights. See United States v. Duncan, __F.3d__, 2005 WL 428414 at *1 (11th Cir. Feb. 25, 2005) (discussing the two majority opinions in Booker).

The first question that an appellate court reviewing a Booker claim must ask is: did the defendant make a constitutional objection? See United States v. Candelario, 240 F.3d 1300, 1303-04 (11th Cir. 2001). We conclude that Dowling did not make a Sixth Amendment objection in the district court which could

6

preserve <u>Booker</u> error. This Court in <u>Candelario</u> described the kind of objection which would preserve an <u>Apprendi</u>[1] error:

> not every objection is a constitutional objection. A defendant may be deemed to have made a constitutional objection if his objection invokes <u>Apprendi</u> or <u>Jones</u>.[2] The defendant may also be deemed to have made a constitutional objection if he contends that "the issue of drug quantity should go to the jury." Other potential constitutional objections include that an element of the offense was not proved, that the judge cannot determine quantity, or that quantity must be proved beyond a reasonable doubt (and not by a preponderance of the evidence).

<u>Id.</u> at 1304 (internal citations omitted).

Because <u>Booker</u> is based on the <u>Apprendi</u> line of cases, we follow the rule set out in <u>Candelario</u> and apply similar standards to determine whether Dowling has preserved her claim with respect to <u>Booker</u>. <u>Candelario</u> held that an objection based solely upon sufficiency of the evidence does not preserve a constitutional error under <u>Apprendi</u>. <u>Id.</u> at 1308 (citing <u>United States v. Swatzie</u>, 228 F.3d 1278, 1283 (11th Cir. 2000)), for the proposition that a defendant's objection to the amount and form of cocaine did not preserve <u>Apprendi</u> error where the defendant did not raise <u>Apprendi</u> or <u>Jones</u>, "or otherwise base his objection on the fact that drug quantity (and type) must be found by the jury beyond a reasonable doubt.").

---

[1]     <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 120 S.Ct. 2348 (2000).

[2]     <u>Jones v. United States</u>, 526 U.S. 227, 119 S.Ct. 1215 (1999).

7

In the instant case, Dowling's objections to the pre-sentence report were set out in her attorney's January 5, 2004 letter to the probation officer. That letter included the following language: "The jury verdict finding Avonda Dowling guilty of conspiracy to possess with intent to distribute less than 500 grams of powder cocaine, under the unique facts and circumstances of this case, must be respected. Therefore, the base offense level is no greater than level 24." We can assume arguendo that Booker error would be preserved if an objection in the instant case had in fact fairly apprised the district court that the objection was an insistence that the jury verdict of less than 500 grams was binding and "must be respected." However, the context of the foregoing language in the instant case reveals that Dowling's objection had no such meaning.

In the first place, the above-quoted language contains the caveat "under the unique facts and circumstances of this case." The meaning of that caveat is made clear from the balance of the January 5, 2004 letter and from Dowling's presentation to the district court at sentencing. Both in the letter and at sentencing, Dowling's attorney makes clear that the ground of the objection was as follows: Dowling argued that her testimony at trial supported an affirmative defense that she had withdrawn from the conspiracy charged in the indictment by the late Spring of 1995, and because her withdrawal from the conspiracy occurred more than 5 years

prior to the indictment, the indictment was barred by the statute of limitations. Both in the letter and at sentencing, Dowling's attorney tried to explain why he thought the jury's finding of less than 500 grams might also mean that the jury must have accepted her affirmative defense of withdrawal from the conspiracy.

The district court was clearly dubious of the attorney's interpretation of the jury verdict, noting that the jury had found Dowling guilty of the conspiracy. Dowling's attorney tried to explain that away by suggesting that the jury must have found Dowling guilty of possessing two grams that the officer had testified were found in her purse at her March 1998 arrest and might have mistakenly[3] believed that that event was part of the conspiracy charged in the indictment. The district judge listened carefully to Dowling's attorney's presentation of this argument, and understood that Dowling's attorney fervently believed that Dowling was innocent of the charges in the indictment. However, the district judge clearly rejected as unpersuasive the attorney's interpretation of the jury verdict,[4] repeatedly reminding the attorney that the jury had in fact found Dowling guilty of the conspiracy charged in the indictment.

---

[3] Dowling's attorney acknowledged in the same breath that it was clear that the two grams were not in fact part of the conspiracy charged in the indictment.

[4] The government correctly notes that there are a number of other more plausible explanations for the jury's verdict. We conclude that the district court did not err in rejecting Dowling's argument that the jury must have believed her affirmative defense.

From the foregoing discussion, it is clear that the objection in the instant case does not constitute a constitutional objection in any of the ways indicated in Candelario. There was no reference to the Sixth Amendment, or a right to have the issue of drug quantity decided by a jury rather than the judge. There was no citation to Apprendi or to other cases in that line of cases. There was no challenge to the role of the judge as fact-finder with respect to sentencing facts. To the contrary, Dowling's attorney clearly understood the judge's role as the fact-finder by a preponderance of the evidence, and never challenged that. Rather, the objection in the instant case was akin to an objection based upon the sufficiency of the evidence. In other words, it was an effort by Dowling's attorney to persuade the district judge to find the facts as the attorney desired, by persuading the judge that his client had withdrawn from the conspiracy by the middle of 1995, an interpretation of the evidence which the attorney characterized in the January 5, 2004 letter as being "supported" by the jury verdict. However, Dowling's attorney never argued that the district court was bound to the facts found by the jury verdict because of a Sixth Amendment right to jury trial or for any other reason.

For the foregoing reasons, we cannot conclude that Dowling preserved a claim of Booker error. See Fed.R.Crim.P. 51(b) (requiring for preservation of error that the party inform the court not only of the action the party wishes the court to

10

take, but also the grounds therefor).[5]  Therefore, we review Dowling's claim for plain error because Dowling raised this argument for the first time in her initial brief on appeal.  Duncan, __F.3d.__, 2005 WL 428414 at *2.

An appellate court may not correct an error the defendant failed to raise in the district court unless there is: "'(1) error, (2) that is plain, and (3) that affects substantial rights.'" Rodriguez, __F.3d.__, 2005 WL 272952 at *6 (quoting United States v. Cotton, 535 U.S. 625, 631, 122 S. Ct. 1781, 1785 (2002))."'If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" Id. (quoting Cotton, 535 U.S. at 631, 122 S. Ct. at 1785).

In United States v. Rodriguez, we first addressed plain error review under Booker. ___F.3d.____, 2005 WL 272952 at *6.  In that case, we found that while the defendant could meet the first two prongs of the plain error test, he could not meet the third prong because he could not show an error that affected his

---

[5]  Federal Rule of Criminal Procedure 51(b) states:
>     Preserving a Claim of Error. A party may preserve a claim of error by informing the court – when the court ruling or order is made or sought – of the action the party wishes the court to take, or the party's objection to the court's action and the grounds for that objection. If a party does not have an opportunity to object to a ruling or order, the absence of an objection does not later prejudice that party. A ruling or order that admits or excludes evidence is governed by Federal Rule of Evidence 103.

substantial rights. Id. at *9. We stated that Booker error is the mandatory, as opposed to advisory, application of the Guidelines. Id. at *8. We concluded that the defendant bears the burden of persuasion with respect to prejudice, and that he cannot survive plain error analysis unless he can show "there is a reasonable probability of a different result if the guidelines had been applied in an advisory instead of binding fashion by the sentencing judge in this case." Id. at *9.

Dowling cannot show that "there is a reasonable probability of a different result if the guidelines had been applied in an advisory instead of binding fashion by the sentencing judge in this case" because nothing in the record indicates that the judge might have imposed a different sentence in the new advisory regime. Dowling therefore cannot meet her burden to show prejudice and overcome the third prong of plain error analysis. Id. at *10.

The sentencing judge did express some concern and an "intellectual difficulty" with applying the Guidelines' cross reference for murder because murder was not charged by the prosecutor. We recognize that statements made by a sentencing judge expressing hesitation when applying the Guidelines as mandatory can serve as evidence that the result may have been different if the Guidelines had been applied as advisory. See United States v. Shelton, __ F.3d __, 2005 WL 435120 (11th Cir. Feb. 25, 2005) (holding that a defendant met the third

12

prong of plain error analysis, demonstrating prejudice resulting from a Booker error, where the sentencing judge made several statements indicating the mandatory Guideline sentence was "very, very severe" and sentenced the defendant at the low end of the Guideline range). However, we need not decide whether the judge's statements in this case would be sufficient evidence that the judge would not have applied the murder enhancement had the Guidelines not been mandatory, because that enhancement made no difference to Dowling's resulting sentence.[6] Even if the judge had not applied the enhancement for murder, Dowling's sentence would have been the same twenty year maximum allowed by the United States Code. Because the conspiracy involved at least 150 kilograms of powder cocaine and 1.5 kilograms of crack, the base offense level was 38. The sentencing judge noted that she was accepting Dowling's own testimony in finding those drug amounts. In addition, the sentencing judge applied a four-level enhancement because Dowling was an organizer or leader of a criminal activity involving five or more participants. This enhancement was undisputed, there being no objection thereto

_____

[6]      The Government pointed out to the judge at sentencing that the enhancement relating to Dowling's complicity in two murders was irrelevant because the drug quantity and the undisputed role in the offense placed the offense at level 42, and the bottom end of that range far exceeded the statutory maximum of 240 months. The sentencing judge well understood this. The judge's concern seemed to have been about the possible collateral consequences of the emphasis in the Presentence Investigation Report ("PSI") on the murders, and she directed minor alterations in the PSI tending to de-emphasize the murders. However, there was no suggestion in the sentencing transcript that the judge had any inclination to impose a lesser sentence.

either in the Presentence Investigation Report or at sentencing. These two findings put Dowling at Guideline level 42. For level 42, the 2003 Guidelines recommend a sentencing range of 360 months to life for all criminal history levels, a range that is well above the 20 year maximum the judge ultimately imposed pursuant to the United States Code, U.S.S.G. § 5G1.1[7] and the rule laid out in Apprendi.[8] Therefore, Dowling cannot meet her burden of persuasion under the reasoning in Rodriguez, because she cannot point to anything indicating a "different result if the guidelines had been applied in an advisory instead of binding fashion." Rodriguez, 2005 WL 272952 at *9.

We have carefully reviewed each argument asserted on appeal, and for the foregoing reasons, the judgment of conviction and sentence of the district court are

AFFIRMED.

---

[7] U.S.S.G. § 5G1.1(a) states:
Where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence.

[8] In fact, the drug quantity finding alone, combined with Dowling's criminal history level, put Dowling well above the sentence actually imposed.

14