TJOFLAT, Circuit Judge, specially concurring.
I concur in the court’s judgment affirming Wright’s convictions because, as the court correctly concludes, Wright has not shown reversible error. I concur in the court’s affirmance of Wright’s sentences because precedent — namely United States v. Rodriguez, 398 F.3d 1291 (11th Cir. 2005), reh’g en banc denied, 406 F.3d 1261 (11th Cir.2005), cert, denied, — U.S.-, 125 S.Ct. 2935, 162 L.Ed.2d 866 (2005)— requires that we do so notwithstanding the fact that, as the Government’s brief properly concedes, “the district court committed error that is plain by enhancing Wright’s sentence, under a mandatory guidelines system, based on the court’s finding as to a fact (drug quantity) not admitted by Wright or found by a jury.” Appellee’s Brief at 20. The court upholds Wright’s sentences because Wright has not satisfied “the third prong of the plain error standard!, i.e.,] ‘nothing in the record indicates that the judge might have imposed a different sentence’ had the Sentencing Guidelines been employed in an advisory instead of binding fashion.” Ante at-(quoting United States v. Dowling, 403 F.3d 1242, 1247 (11th Cir.2005)).[1] In other words, because Wright cannot point to something the district court said prior to or in the course of imposing sentence to indicate that, but for the mandatory nature of the Guidelines, he would have received sentences lower than the Guidelines prescribed, he cannot show prejudice — that the error affected his “substantial rights.” In short, the district court failed to utter what I call “magic words,” words that Wright, and we, could seize upon to conclude that he suffered prejudice.
We should never expect to find these magic words in the record of a sentencing hearing held pre-Booker. Why so? Because we judges are bound by the oath of office to uphold the law, whether we like it or not. And the Guidelines are the law. They were enacted by democratically empowered lawmakers, the Congress.[2] If a *820 judge is dissatisfied with the Guidelines system, or any of the sentences the Guidelines prescribe, the judge should take it up with the Congress (or the Sentencing Commission). A sentencing hearing is not the appropriate forum for voicing such dissatisfaction, which is why most judges are not likely to tell the defendant that the sentence about to be imposed is unfair or unjust, but that there is nothing the court can do about it. By telling the defendant that his sentence is unfair or unjust, the judge invites (albeit unwittingly) the defendant “to persist in attacking his sentence on direct appeal and collateral review, notwithstanding that its substance and the manner of its imposition are legally correct. After all, why should the defendant not appeal a sentence that even the judge criticized as too severe?” United States v. Thompson, 422 F.8d 1285, 1303-04 (11th Cir.2005) (Tjoflat, J. specially concurring). Indeed, “by openly disparaging the defendant’s sentence, the judge fosters disrespect for the rule of law.” Id. at 1304.
Avoiding this untoward consequence is what prompts judges to avoid the magic words we look for. As I observed in Thompson, this process — searching for magic words—
is as arbitrary as it is absurd. A defendant is rewarded with a new sentencing hearing only if the sentencing judge took the entirely inappropriate step of publicly criticizing the law that required him to impose the sentence. In contrast, a defendant whose sentence was imposed without gratuitous comment by the sentencing judge is denied a new hearing. “It [is] a mistake to infer from a district court’s silence that the district court would not have made a different decision under a different sentencing scheme.” Silence often means nothing more than that an experienced judge understands his or her proper role in the criminal justice system. Thus, the judge’s comments or silence inevitably turns out to be poor circumstantial evidence of what the judge would do if freed from the constraints imposed by the Guidelines.
422 F.3d at 1305 (citation omitted) (quoting United States v. Ameline, 409 F.3d 1073, 1082 (9th Cir.2005) (en banc)).
What the Booker sentencing scheme would look like was not even in the realm of conjecture when the court sentenced Wright to concurrent prison terms of 360 months. Because the mandatory scheme under which the court was operating was so markedly different from the scheme the Supreme Court created in Booker, the district judge in this case could not possibly have known what sentences he would have imposed had the Guidelines been advisory and the court, rather than the Sentencing Commission, was charged with the task of deciding which of the sentencing purposes set out in 18 U.S.C. § 3553(a)(2) Wright’s sentences should achieve.
I have come full circle. Circuit precedent mandates that we affirm Wright’s sentences. Obeying this law, I concur in the court’s judgment.

. Dowling is nothing more than a straight forward application of Rodriguez.

. To be sure, the Guidelines were framed by the U.S. Sentencing Commission, but the *820 Commission submitted them to Congress, and Congress enacted them.