[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 4, 2005
THOMAS K. KAHN
CLERK

No. 04-13911
Non-Argument Calendar

D.C. Docket No. 03-00132-CR-3-RV

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PHILLIP ELLIOTT,

Defendant-Appellant.

Appeal from the United States District Court for the
Northern District of Florida

**(May 4, 2005)**

Before BLACK, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Phillip Elliott directly appeals his 78-month sentences for two counts of transporting a minor in interstate commerce with the intent to engage in sexual activity, in violation of 18 U.S.C. § 2423(a). Elliott argues on appeal that the district court violated his Sixth Amendment right to a jury trial in applying the federal guidelines in sentencing him, in light of Blakely v. Washington, 542 U.S. ___, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and United States v. Booker, 543 U.S. ___, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). For the reasons set forth more fully below, we affirm Elliott's sentences.

A federal grand jury returned a four-count superseding indictment against Elliott, charging him with committing the above-referenced offenses by transporting a person under the age of 18 in interstate commerce from Florida to Louisiana and Texas, with the intent of engaging in sexual activity, on or about June 6, 2003, and June 28, 2003, respectively ("Counts 1 and 2"). This superseding indictment also charged Elliott with using a person under the age of 18 to engage in sexually explicit conduct for the purpose of producing visual depictions, in violation of 18 U.S.C. § 2251(a) and (d) ("Count 3"); and with possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4) and (b)(2) ("Count 4"). This indictment, however, did not allege the exact age of the juvenile, or that the offenses in Counts 1 and 2 involved causing a minor to engage

2

in sexually explicit conduct for the purpose of producing a visual depiction of such conduct.

In lieu of trial, Elliott orally agreed to plead guilty to Counts 1 and 2 of his superseding indictment, in exchange for the government agreeing to dismiss Counts 3 and 4 at the time of sentencing. During Elliott's change-of-plea hearing, the government proffered that, had the case proceeded to trial, it would have proven, among other facts, that, on June 6 and June 28, 2003, Elliott took a juvenile, who was 15 years' old, from Florida to Louisiana and Texas, to engage in sex. Other than objecting to statements that the sexual conduct occurred before the trips at issue—conduct that was the basis for pending state charges—Elliott agreed with the government's factual proffer.

Prior to sentencing, a probation officer prepared a presentence investigation report ("PSI"), setting out a detailed statement of facts on Elliott's acts of transporting the juvenile across interstate lines and engaging in sexual activities with her in Florida, Louisiana, and Texas. These facts included, among other things, that (1) the victim told law enforcement officers in Florida that Elliott took photographs of her in the nude; (2) officers found photographs of the victim in the nude with her genitals exposed and with leather straps laying across her body in Elliott's personal computer; and (3) law enforcement officers in Texas also

3

discovered computer discs containing pornography and the above-described photographs of the victim.

The probation officer recommended in the PSI that Elliott's offenses be grouped together, pursuant to U.S.S.G. § 3D1.2(b), and that his combined base offense level be set at 19, pursuant to U.S.S.G. § 2G1.1(a)(1) (guideline for § 2423(a) offenses involving a person under the age of 18), because the victim was 14 years' old. The PSI also recommended a two-level upward adjustment, pursuant to U.S.S.G. § 2G1.1(b)(2), because the offense involved a victim who had attained the age of 12 years, but had not yet attained the age of 16 years, resulting in an adjusted offense level of 21. Despite these calculations, however, the PSI determined that the provisions in U.S.S.G. § 2G2.1 were applicable because, under the cross reference in U.S.S.G. § 2G1.1(c)(1), the offenses of conviction involved causing, transporting, permitting, or offering or seeking by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct.[1] Pursuant to U.S.S.G.

---

[1] In support of this cross reference, the probation officer cited to the fact that one of the discs that law enforcement officers seized in Texas contained nude photographs of the victim engaging in sexually explicit conduct. The officer also explained that (1) these photographs were taken both in New Orleans, Louisiana, and at Elliott's residence in Pensacola, Florida; and (2) two cameras and discs containing photographs were recovered from the Texas motel room in which Elliott was found with the juvenile and arrested.

§ 2G2.1(a) & (b)(1), Elliott had a base offense level of 27, which was adjusted upwards two levels because the victim was under the age of 16.

After the PSI applied a two-level downward adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), Elliott's adjusted offense level was 27. Moreover, with a criminal history category of I, Elliott's resulting guideline range was 70 to 87 months' imprisonment. Elliott's only objection to his PSI that affected the calculation of his guideline range involved the recommendation that he only receive a two-level, instead of a three-level § 3E1.1 adjustment for acceptance of responsibility.

On June 9, 2004, at sentencing, Elliott again only objected to the PSI's failure to recommend a three-level § 3E1.1 downward adjustment. The district court sustained this objection, thereby adjusting downward Elliot's total offense level to 26 and his resulting guideline range to 63 to 78 months' imprisonment.[2] After stating that he had no objections to the court's calculation of his guideline range, Elliot's counsel argued for a lenient sentence under the guidelines, based on the facts that (1) Elliott previously had lead a "law-abiding life," (2) his conduct in

---

[2] Although the court initially stated that Elliott's guideline range was 63 to 70 months' imprisonment, it later showed that it understood that the actual range was 63 to 78 months' imprisonment by stating that it was sentencing Elliott to his maximum guideline sentence of 78 months' imprisonment.

the instant offense was "out of character," and (3) he was remorseful. He also requested that the court waive any fines if it imposed restitution.

The court, without objection, ultimately sentenced Elliott to concurrent sentences of 78 months' imprisonment, 5 years' supervised release, a $1,500 fine, and 1, 302.59 in restitution. In imposing this maximum guideline sentence, the court cited to the serious nature of the offenses and to aggravating factors, including the fact that Elliott's last trip to Texas was made in direct violation of a court order. The court also explained that it had considered all of the sentencing factors set out in 18 U.S.C. § 3553(a), and that it had found that the sentence satisfied these factors.

In an appeal brief Elliott filed before the Supreme Court issued its decision in Booker, he argues that the district court plainly erred in sentencing him pursuant to the federal guidelines because they are unconstitutional. Elliott acknowledges a prior decision by this Court that unpreserved Blakely error could not be plain.[3] Nevertheless, Elliott generally contends that (1) this prior decision was incorrectly decided, (2) he should not be deemed to have "forfeited" his

---

[3] We concluded in United States v. Duncan, 381 F.3d 1070, 1075-77 (11th Cir. 2004), opinion vacated and superseded on rehearing by United States v. Duncan, 400 F.3d 1297 (11th Cir. 2005) (mandate withheld), that, because neither the Supreme Court nor this Court had resolved the issue whether Blakely applied to the federal guidelines, the defendant could not show that any error in sentencing the defendant under the federal guidelines was plain.

6

constitutional rights; and (3) plain error occurred because he would have received a lesser sentence if the court had not been "bound by the guidelines." Without explanation, Elliott also asserts that the court's use of the guidelines prejudiced him because the victim was a willing participant in the offenses of conviction.

Because Elliott failed to raise his Blakely/Booker claim in the district court, we review it only for plain error. See United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir.) (applying plain-error review to a newly-raised Blakely claim), petition for cert. filed, No. 04-1148 (Feb. 23, 2005); see also United States v. Dowling, No. 04-10464, manuscript op. at 4 (11th Cir. Mar. 23, 2005) (concluding that a defendant either must (1) refer to the Sixth Amendment, Apprendi, or other related cases; (2) assert his right to have the jury decide the disputed fact; or (3) raise a challenge to the role of the judge as factfinder to preserve a Blakely/Booker claim) (mandate withheld).[4] Under plain error review, an appellate court may not correct an error that the defendant failed to raise in the district court unless there is "'(1) error, (2) that is plain, and (3) that affects substantial rights.'" Rodriguez, 398 F.3d at 1298 (quoting United States v. Cotton,

_____

[4] Justice Breyer also explicitly noted in Booker that, despite that the Supreme Court's holding was applicable to all cases on direct review, the Court did not "believe that every appeal [would] lead to a new sentencing hearing," and that it "expect[ed] reviewing courts to apply ordinary prudential doctrines, determining, for example, whether the issue was raised below and whether it fails the 'plain error' test." See Booker, 543 U.S. at ___, 125 S.Ct. at 769.

535 U.S. 625, 631, 122 S.Ct. 1781, 1785, 152 L.Ed.2d 860 (2002)). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id.

The Supreme Court determined in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), that "[o]ther than the fact of a prior conviction, any fact that increases the penalty beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id., 530 U.S. at 490, 120 S.Ct. at 2362-63. After the district court sentenced Elliott, the Supreme Court concluded in Blakely that the imposition—based solely on the sentencing judge's factual findings—of a sentencing enhancement above the 53-month standard range indicated in the State of Washington's Sentencing Reform Act violated the defendant's Sixth Amendment rights because the facts supporting the findings neither were admitted by the defendant, nor found by a jury. Blakely, 542 U.S. at ___, 124 S.Ct. at 2534-38. The Blakely Court, however, expressly stated that "[t]he Federal Guidelines are not before us, and we express no opinion on them." Id., 542 U.S. at ___, 124 S.Ct. at 2538 n.9.

The Supreme Court in Booker recently determined that "no distinction of constitutional significance [existed] between the Federal Sentencing Guidelines

and the Washington procedures at issue [in Blakely]." Booker, 543 U.S. at ___, 125 S.Ct. at 749. The Court, thus, concluded that the mandatory nature of the guidelines rendered them incompatible with the Sixth Amendment's guarantee to the right to a jury trial. Id., 543 U.S. at ___, 125 S.Ct. at 749-51. The Court also reaffirmed its rationale in Apprendi that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." Id., 543 U.S. at ___, 125 S.Ct. at 756.

In Rodriguez, we reviewed a similar appeal in which the appellant had failed to preserve a Blakely/Booker objection, and the Supreme Court had decided Booker while the appellant's appeal was pending. Rodriguez, 398 F.3d at 1297-98. Applying plain-error review, we determined that the appellant had satisfied the first element of plain error by showing error because, under a mandatory guideline system, the appellant's sentence had been enhanced based on judicially determined factual findings that went beyond the facts admitted by the defendant or found by the jury. Id. at 1300. We also concluded that the second element of plain-error review had been met because, although the Blakely/Booker error had not been "plain" when the court had sentenced the appellant, "where the law at the

time of trial was settled and clearly contrary to the law at the time of appeal—it is enough that the error be 'plain' at the time of appellate consideration." Id. at 1299 (quoting Johnson v. United States, 520 U.S. 461, 468, 117 S.Ct. 1544, 1549, 137 L.Ed.2d 718 (1997)); see also Booker, 543 U.S. at ___, 125 S.Ct. at 769 (directing that the decision was applicable to all cases on direct appeal).

We, however, concluded that no plain error had occurred in Rodriguez because, under the third element of plain error, the appellant had failed to show that the Booker error had "affect[ed] substantial rights," that is, that the error "must have affected the outcome of the district court proceedings." Rodriguez, 398 F.3d at 1299-1301 (quotation omitted). We discussed that the test for showing that the error "affected the outcome of the district court proceedings" was the formulation of a reasonable probability of a different result, which means a probability "sufficient to undermine confidence in the outcome." Id. at 1299 (quotation omitted). We also reiterated that, under this third element, "[i]t is the defendant rather than the [g]overnment who bears the burden of persuasion with respect to prejudice." Id. (quotation omitted).[5] Because we determined that the

_____

[5] We explained in further detail in Rodriguez that "pre-Booker defendants must establish a reasonable probability that if the district court had considered the guidelines range it arrived at using extra-verdict enhancements as merely advisory, instead of mandatory, and had taken into account any otherwise unconsidered [18 U.S.C. § 3553(a)] factors, the court would have imposed a lesser sentence than it did." See Rodriguez, 398 F.3d at 1302.

record in Rodriguez "provide[d] no reason to believe any result [was] more likely than not," we concluded that the appellant had not met his burden on the third element of plain-error review. Id. at 1301. Moreover, we concluded that we "ha[d] no occasion to decide how [the appellant] would have fared under the fourth [element]." Id.

In the instant appeal, to the extent the court adjusted Elliott's guideline sentence upwards two levels, pursuant to § 2G1.1(b)(2), because the offense involved a victim who had attained the age of 12, but had not yet attained the age of 16, Elliott admitted during his change-of-plea hearing that the victim was 15 years' old. Thus, Elliott did not show that this adjustment constituted a Sixth Amendment violation under Booker. See United States v. Shelton, 400 F.3d 1325, 1329-30 (11th Cir. 2005) (concluding that district court did not commit a Sixth Amendment violation under Booker by relying on facts admitted by the defendant).

On the other hand, by adjusting Elliott's guideline range under the provisions in § 2G2.1, the court relied on facts not admitted by Elliott, that is, that (1) one of the computer discs that law enforcement officers seized in Texas contained nude photographs of the victim engaging in sexually-explicit conduct; (2) these photographs were taken both in New Orleans, Louisiana, and at Elliott's

11

residence in Pensacola, Florida; and (3) two cameras and discs containing photographs were recovered from the Texas motel room in which Elliott was found with the juvenile and arrested. Moreover, the court was operating under a mandatory guidelines system. Booker error, therefore, occurred, and it is now "plain." See Rodriguez, 398 F.3d at 1299.

However, similar to the facts in Rodriguez, Elliott has not explained, much less proven under the third element of plain-error review, how his substantial rights were affected by this Booker error. Indeed, district courts still must consider defendants' applicable guideline ranges. See Booker, 543 U.S. at ___, 125 S.Ct. at 764 ("Without the 'mandatory' provision, the [Sentencing Reform Act] nonetheless requires judges to take account of the Guidelines together with other sentencing goals").[6] The PSI contained an extensive summary of the facts underlying the offenses of conviction, and the court explicitly stated that it had

---

[6] These other relevant "sentencing goals" include: "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed–(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for . . . (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .; (5) any pertinent policy statement []; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense." See 18 U.S.C. § 3553(a)(1)-(7).

12

considered the nature and circumstances of the offense.  See 18 U.S.C.

§ 3553(a)(1).  Indeed, in imposing a sentence at the high end of Elliott's guideline

range, the court cited to the serious nature of the offenses and to aggravating

factors, including that Elliott's last trip to Texas was made in direct violation of a

court order.  The court's imposition of this sentence also demonstrated that it

considered the need for the sentence imposed, and that it would not have imposed

a sentence below Elliott's guideline range, but for the then mandatory nature of the

guidelines.  See 18 U.S.S.C. § 3553(a)(2)-(4); see also United States v. Curtis, 400

F.3d 1334, 1336 (11th Cir. 2005) (noting that the imposition of the maximum term

of imprisonment permitted by the relevant guideline range was "inconsistent with

any suggestion that the sentencing judge would have imposed a lesser sentence if

the judge had realized the [federal guidelines] were advisory").

Nevertheless, even in the absence of these determinations, the likelihood of

a different result would be speculative without a clear statement or sign from the

court that, but for the fact that its discretion was constrained under the federal

guidelines, it would have imposed a lighter sentence.  See Dowling, No. 04-10464,

manuscript op. at 5 (concluding that no plain error occurred because the defendant

could not point to anything in the record indicating a different result if the

guidelines had been applied in an advisory instead of binding fashion).[7] Similar to the defendant in Dowling, Elliott has not cited to such evidence. At best, it is unclear whether the court would have imposed a different sentence. Elliott, therefore, has not met his burden of showing a reasonable probability that the result of his sentencing would have been different but for the Booker error, and we need not determine the fourth element of plain-error review. See Rodriguez, 398 F.3d at 1301.

In sum, the district court erred under Booker and this error was "plain." We, however, may not exercise our discretion to notice this forfeited error because Elliott has failed to carry his burden of showing that this pre-Booker error affected his substantial rights. Accordingly, we conclude that the district court did not plainly err in applying the federal guidelines in sentencing Elliott. We affirm.

**AFFIRMED.**

---

[7] In comparison, we concluded in Shelton that the defendant carried his burden of showing that Booker error affected his substantial rights by citing to several statements by the district court during sentencing, indicating that he wished to impose a sentence lesser than the low end of the defendant's guideline range. See Shelton, 400 F.3d at 1332-33.