[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 29, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-10568
Non-Argument Calendar

_____

D.C. Docket No. 02-00362-CR-T-27-MSS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAMES LEE WHEELER,
a.k.a. Frank Wheeler,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(June 29, 2005)

Before BIRCH, BLACK and PRYOR, Circuit Judges.

PER CURIAM:

James Lee Wheeler appeals his conviction and sentence for violation of the

Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C.

§ 1962(c), conspiracy to commit racketeering activities, in violation of 18 U.S.C. § 1962(d), and obstruction of the administration of justice, in violation of 18 U.S.C. § 1503. Because we conclude that the district court did not commit plain error in enhancing Wheeler's sentence based on judicially found facts under a mandatory sentencing guidelines scheme, or in failing to grant a mistrial sua sponte on account of prosecutorial misconduct, we **AFFIRM**.

## I. BACKGROUND

A federal grand jury indicted Wheeler for various crimes related to his involvement in the Outlaws Motorcycle Club ("the Outlaws"), an international organization whose members have rejected social norms in favor of their own set of standards. Presentence Investigation Report ("PSI") at 2 ¶ 14. Specifically, the grand jury indicted Wheeler for engaging in a pattern of racketeering through the Outlaws, an enterprise engaged in interstate and foreign commerce, in violation of 18 U.S.C. § 1962(c) (Count 1); conspiracy to conduct and participate, directly or indirectly, in the conduct of the affairs of the Outlaws, through a pattern of racketeering, in violation of 18 U.S.C. § 1962(d) (Count 2); conspiracy to distribute 500 grams or more of a mixture or substance containing a detectable amount of cocaine, in violation of 21 U.S.C. § 846 (Count 3); conspiracy to distribute 5 kilograms or more of a mixture or substance containing a detectable

amount of cocaine and a quantity of methamphetamine, in violation of 21 U.S.C.

§ 846 (Count 4); obstruction of justice by harboring, concealing, and assisting a

fugitive, a member of the Outlaws, in violation of 18 U.S.C. § 1503 (Count 5); and

conspiracy to harbor and conceal a fugitive member of the Outlaws, in violation of

18 U.S.C. § 1071 (Count 6).

A.    Trial

At trial, before opening statements, the district court informed the jury of

the function of opening statements and advised them to "remember [that] what the

lawyers say is not evidence, but [that] they are advocates and their opening

statements and closing arguments should be helpful . . . in understanding the

evidence." R14 at 9.  In his opening statement, the prosecutor stated:

> 99 percent of people who ride motorcycles are good, honest, hard
> working individuals.  The Defendant prides himself on being the
> president of a motorcycle club that is part of the other 1 percent of
> bikers.  Part of the 1 percent of bikers who rejects society's norms
> and refuse to live by our laws, refuse to live by our laws.
>     He is the worldwide president of the American Outlaw
> Association[,] also known as the Outlaw Motorcycle Club.  Outlaws,
> the word says it all.  Notorious –

R14 at 13.  Wheeler objected that the statement was argumentative.  The district

court responded, "Keep it factual, please." Id.  The prosecutor continued:

> The evidence is going to show without any doubt that not only is the
> Defendant an Outlaw, that was easy to prove, that's his back, but that

3

> the Defendant is proud of the fact that he is a member and
> International President of a group which prides itself on being known
> as outlaws, notorious, habitual criminals.

Id.  Wheeler did not object.

Later in his opening statement, the prosecutor played an audio recording on which Wheeler expressed frustration that others were intruding on the Outlaws' drug distribution avenues.  The prosecutor then stated, "That, folks, is not a club meeting.  That is a gang meeting.  The Boy Scouts of America is a club, the Knights of Col[u]mbus–"  Id. at 19.  Wheeler interrupted the prosecutor and again objected on the grounds that the statement was argumentative.  The district court sustained the objection.  The prosecutor continued, "The evidence is going to show the Outlaw Motorcycle Club is a gang."  Id.  The prosecutor proceeded with his opening, and Wheeler objected on the same grounds.  The district court sustained Wheeler's objection and again advised the prosecutor to "keep it factual."  Id. at 20.  After explaining that the evidence would show that Wheeler conspired to commit crimes, the prosecutor stated:

> And I know this sounds foreign to you folks because you can't relate
> to it.  If you are like me, you like to draw analogies and you probably
> don't have an analogy for this.  Grown men, the evidence is going to
> show, were consumed with a turf war as if they were teenage boys.
> It's like something out of West Side Story.

Id. at 21-22. Wheeler objected on the grounds that the statement was argumentative, and the district court sustained the objection.

Showing the jury a picture of Wheeler with three other high-ranking Outlaws officers, the prosecutor then stated, "And if you look right here, you'll see on Wop's [the president of the Canadian Outlaws] shirt, GFOD, God forgives, Outlaws don't. And in sum and substance what that means is if you cross them –" Id. at 28. Wheeler objected on the grounds that the statement was argumentative. The district court sustained the objection and again advised the prosecutor, "Keep it factual, please." Id. at 28. Later, the prosecutor stated, "Now I alluded to this yesterday during jury selection, I wish that I could call Sunday school teachers and maybe my high school English teacher –" Id. at 29. Wheeler objected without stating any grounds. The district court sustained the objection. The prosecutor continued, "The evidence is going to show that unfortunately the witnesses to many of these crimes are Outlaws themselves." Id.

Before closing arguments, the district court reminded the jury that "what the lawyers say is not evidence in the case. If their recollection of the evidence differs from your recollection, it is your recollection of the evidence which controls." R44 at 3. In his closing, the prosecutor argued, in relevant part:

5

I'm going to focus a lot right now, not necessarily on what witnesses told you, because as you have seen, I could call any witness, and since most of my witnesses were Outlaws, they are very easy to attack on cross-examination because they are bad people. They are bad people. But keep in mind they are people that the defendant surrounded himself with. They are not people we chose to put next to the defendant. They are people he chose to surround himself with.

So since they are bad and they are easy to cross-examine, I'm going to spend a lot of time right now talking about things that no one can dispute.

Id. at 10-11. Wheeler did not object.

The jury found Wheeler guilty on Counts 1, 2, and 5, and acquitted him of Count 3. For Count 1, the jury found that Wheeler had conspired to distribute "500 grams or more" of cocaine. R3-153 at 2-3. The district court dismissed Count 4 and entered a judgment of acquittal on Counts 3 and 6.

B.     Sentencing

For Count 1, the probation officer assigned Wheeler a base offense level of 30 based on a drug quantity of at least 3.5 but less than 5 kilograms of cocaine. PSI at 6 ¶ 36. For Counts 1 and 2, the probation officer imposed a three-level increase because Wheeler was a regional leader and national vice president of the Outlaws when the crimes were committed. For Count 5, the probation officer imposed a four-level upward adjustment because Wheeler was an organizer,

leader, manager, or supervisor in the criminal activity. According to the PSI, Wheeler had a total offense level of 34.

The PSI indicated that Wheeler had (1) a 1963 misdemeanor burglary conviction, (2) a 1964 burglary conviction, (3) a 1971 felony drug conviction, and (4) a 1981 violation of the Firearms Act. Additionally, from 1963 to 1985, Wheeler had been charged with but not convicted of various other crimes. The probation officer did not assign Wheeler any criminal history points for those four convictions or charges without convictions. Instead, the probation officer gave Wheeler a total of three criminal history points, all from a 1985 conviction for possession of a firearm by a convicted felon. At the time of the PSI, Wheeler also had pending federal charges in the Northern District of Ohio.

At the sentencing hearing, the parties raised several objections to the PSI that are relevant here. First, both the government and Wheeler objected to the drug quantity–at least 3.5 but less than 5 kilograms of cocaine–used in the PSI to determine Wheeler's base offense level. The government contended that trial evidence demonstrated by a preponderance of the evidence that Wheeler distributed over five kilograms of cocaine. Wheeler argued that he should be held accountable for conspiring to distribute just 500 grams of cocaine, the amount specified in the jury's verdict. The district court overruled both objections and

found that the probation officer accurately attributed to Wheeler at least 3.5 but less than five kilograms of cocaine.

Second, both parties objected to the PSI's assignment of a three level role enhancement applied for Counts 1 and 2. The government argued that Wheeler's sentence should be enhanced four levels because he acted as a leader or organizer in both the drug distribution and arson offenses. In response, Wheeler argued that the evidence did not support any enhancement for role in the offenses. The district court found that the evidence placed Wheeler in discussions leading to the bombing but suggested he was a manager, not a leader. It overruled both objections.

Third, the government argued that Wheeler's criminal history category did not adequately reflect the seriousness of his past criminal conduct or the likelihood that he would commit other crimes. Specifically, the government pointed out Wheeler's unscored crimes from 1963, 1964, 1971, and 1981 and contended that Wheeler had lived a "life of crime." R47 at 32. In response, Wheeler argued that the crimes not accounted for in his criminal history category had no bearing on Wheeler's current propensity to commit a crime, a fact that the sentencing guidelines recognized. The district court applied U.S.S.G. § 4A1.3 and found that Wheeler's criminal history category substantially underrepresented the seriousness

8

of his criminal history.  Accordingly, it overruled Wheeler's objection, sustained the government's position, and departed upward one category.

Wheeler objected to the four-level role enhancement on Count 5, obstruction of justice.  Wheeler argued that the evidence did not support the enhancement and requested that the district court find that he played a minor role in the offense.  After reviewing the testimony given at trial, the  district court found that Wheeler was not a minor participant and that the evidence supported a four-level enhancement based on Wheeler's leadership role.

Applying the sentencing guidelines, the district court stated that Wheeler's total offense level was 34 and his criminal history category was III.  Wheeler's guidelines range was 188 months to 235 months of imprisonment.  The district court imposed a sentence of 199 months of imprisonment for Counts 1 and 2 and 120 months of imprisonment for Count 5, all to run concurrently, and five years of supervised release on Counts 1 and 2, and three years of supervised release on Count 3, to run concurrently.  It also imposed a fine of $17,500.

## II.  DISCUSSION

On appeal, Wheeler raises two main arguments.  First, he argues that under Blakely v. Washington, 542 U.S. __, 124 S. Ct. 2531 (2004), and United States v. Booker, 543 U.S. __, 125 S. Ct. 738 (2005), the district court violated his Sixth

Amendment right to a jury trial by increasing his criminal history category, pursuant to U.S.S.G. § 4A1.3, and by enhancing his sentence four levels, pursuant to U.S.S.G. § 3B1.2, based on facts not found by the jury or admitted by Wheeler.[1] Second, Wheeler contends that he should be granted a mistrial because the prosecutor repeatedly implied in his opening statement and closing argument that Wheeler was guilty by association, Wheeler objected to these remarks, and the prosecutor ignored the district court's admonishments, thereby committing prosecutorial misconduct and causing a miscarriage of justice.

A.    *Booker* Issues

While the instant case was pending on appeal, the Supreme Court rendered its decision in Booker.  In Booker, the Supreme Court held that the mandatory nature of the Sentencing Guidelines made them incompatible with the Sixth Amendment's guarantee to the right to a jury trial.  543 U.S. at __, 125 S. Ct. at 749-51.  The Court concluded that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the

---

[1] In his reply brief, Wheeler additionally notes that the district court committed a Booker error in imposing a sentence based on a drug quantity not found by the jury or admitted by Wheeler. Because Wheeler did not timely raise this issue in his initial brief, we deem it waived or abandoned. United States v. Day, 405 F.3d 1293, 1294 n.1 (11th Cir. 2005).

defendant or proved to a jury beyond a reasonable doubt." Id. at ___, 125 S. Ct. at 756. Additionally, the Court invalidated two provisions of the Sentencing Reform Act of 1984 that had made the sentencing guidelines mandatory but held that district courts must continue to take the guidelines into account in conjunction with other sentencing goals. Id. at __, 125 S. Ct. at 764. The Court explicitly noted that both its Sixth Amendment holding and remedial interpretation of the Sentencing Act should be applied "to all cases on direct review." Id. at ___, 125 S. Ct. at 769.

Because Wheeler did not raise his Blakely/Booker arguments before the district court, we review for plain error.[2] Under the plain error standard, we may reverse only if there was: (1) error, (2) that was plain, (3) and that affected the defendant's substantial rights, and if (4) "the error seriously affects the fairness,

[2]A defendant must have made a timely constitutional objection in the district court in order to preserve a Booker error. See United States v. Dowling, 403 F.3d 1242, 1245 (11th Cir. 2005) (mandate withheld). As we have recognized, "not every objection is a constitutional objection." Id. We will find that a defendant raised a constitutional objection if his objection invoked the Sixth Amendment, Apprendi, or related cases, discussed the right to have the jury decide the disputed fact, or raised a challenge to the role of the judge as fact finder in sentencing. An objection based solely on the sufficiency of the evidence does not qualify. Id.

In this case, Wheeler contends that he preserved his Booker errors by objecting to every enhancement based on judicially found facts. However, after reviewing Wheeler's written objections to the PSI and his counsel's statements at trial, we conclude that his objections were not constitutional. In objecting to the criminal history increase, Wheeler discussed the relevance of each of Wheeler's past unscored crimes to the offense of conviction. In objecting to the leadership role enhancement, Wheeler argued that the facts, as presented in testimony at trial, did not support the enhancement. These objections are akin to factual sufficiency objections and do not preserve any Booker errors. See id.

11

integrity or public reputation of judicial proceedings." United States v. Duncan, 400 F.3d 1297, 1301 (11th Cir. 2005).

Under Booker, the first two prongs of the plain error test are satisfied where "[u]nder a mandatory guidelines system, [a defendant's] sentence was enhanced as a result of findings made by the judge that went beyond the facts admitted by the defendant or found by the jury." United States v. Rodriguez, 398 F.3d 1291, 1298-99 (11th Cir. 2005), cert. denied, 73 U.S.L.W. 3531 (U.S. June 20, 2005) (No. 04-1148). To satisfy the third prong of the plain error test, a defendant whose sentence was imposed before Booker must prove that there exists a reasonable probability that his sentence would have been different had the district court applied the guidelines as though they were advisory rather than mandatory. Id. at 1301. If the record provides no indication that the district court would have imposed a different sentence, the defendant cannot prove that the plain error affected his substantial rights, and he does not meet the third prong of the test. Duncan, 400 F.3d at 1304; Rodriguez, 398 F.3d at 1304.

Wheeler can meet the first two prongs of plain error because, under a mandatory guidelines system, his sentence was enhanced based on facts not found by the jury. See Rodriguez, 398 F.3d at 1298-99. However, Wheeler fails to establish the third prong. He does not point to any evidence in the record

12

indicating "a reasonable probability of a different result if the guidelines had been applied in an advisory instead of binding fashion." Id. at 1301. Therefore, the district court did not plainly err under Booker.

B.     Alleged Prosecutorial Misconduct

To preserve the denial of a mistrial for appeal, a defendant must make an objection to the improper argument and/or move for a mistrial in district court. See United States v. Hernandez, 896 F.2d 513, 523 (11th Cir. 1990) (refusing to review argument for a mistrial where defendant neither objected to allegedly harmful statements nor moved for a mistrial in the district court); cf. United States v. Montoya, 782 F.2d 1554, 1556 (11th Cir. 1986) (per curiam) (concluding that defendant had failed to preserve the issue where he withdrew his motion for a mistrial in the district court). Further, the objection must serve "to apprise the trial court and the opposing party of the particular grounds upon which appellate relief will later be sought. A general objection or an objection on other grounds will not suffice." United States v. Dennis, 786 F.2d 1029, 1042 (11th Cir. 1986) (discussing generally the requirements for preserving an argument on appeal). We review unpreserved arguments for plain error. See Hernandez, 896 F.2d at 523.

In this case, Wheeler objected at trial to some, but not all, of the prosecutor's allegedly improper statements. When Wheeler did object, he did so

13

on the basis that the prosecutor's statements were argumentative, not that they improperly implied Wheeler's guilt by association. Further, he did not at any time move for a mistrial based on the prosecutor's alleged misconduct. Accordingly, Wheeler failed to preserve the issue for appeal, and we review for plain error.[3]

As discussed previously, we are authorized under the plain error doctrine "to correct 'only particularly egregious errors' . . . that 'seriously affect the fairness, integrity, or public reputation of judicial proceedings.'" Id. Prosecutorial misconduct exists apart from the plain error standard if (1) the prosecutor made improper remarks, and (2) the remarks prejudicially affected the defendant's substantial rights. United States v. Lacayo, 758 F.2d 1559, 1565 (11th Cir. 1985). Although a prosecutor may commit misconduct if he implies that a defendant is guilty by association, United States v. Singleterry, 646 F.2d 1014, 1020 (5th Cir. 1981); cf. United States v. Forrest, 620 F.2d 446, 451 (5th Cir. 1980) (a defendant's association with a criminal "does not support the inference that [he] is a criminal or shares the criminal's guilty knowledge"), we have recognized that a prosecutor may demonstrate association with other participants as "one factor of

_____

[3] We are mindful that no objection is necessary to preserve the error if the prosecutor's remarks "were so grossly prejudicial that the harm could not be removed by objections or instructions." United States v. Harbin, 601 F.2d 773, 776 n.2 (5th Cir. 1979) (citations and internal punctuation omitted). Not only has Wheeler not argued this point on appeal, our own review of the record indicates that those circumstances do not exist in this case.

14

many which may be considered in ascertaining the existence of a conspiracy."

United States v. Harrell, 737 F.2d 971, 978 (11th Cir. 1984). Further,

"unflattering characterizations of a defendant," including remarks detailing his

association with unsavory persons testifying as witnesses, do not require reversal

if they are supported by the evidence. United States v. Tisdale, 817 F.2d 1552,

1555 (11th Cir. 1987) (per curiam) (citation and quotations omitted) (finding no

error where prosecutor remarked, "'I am not going to stand here and tell you that

[a witness] is a wonderful person . . . he is [a] dirty, low-life criminal, but so is [the

defendant]. They have known each other since the 60s,'" because the statements

were supported by evidence). In determining the prejudicial effect of an improper

argument, we consider, inter alia, the degree to which the improper statements

permeated the trial and the presence of curative instructions. United States v.

Rodriguez, 765 F.2d 1546, 1560 (11th Cir. 1985).

In this case, the district court did not plainly err in failing to grant a mistrial

based on the prosecutor's comments. The prosecutor's remarks in his opening

statement that Wheeler associated with the Outlaws, the racketeering-influenced

organization described in the indictment, were proper to outline evidence

concerning the existence of a RICO conspiracy. See Harrell, 737 F.2d at 978. Our

review of the record indicates that the prosecutor's remarks in his opening

15

statement were grounded in facts proven at trial, see Tisdale, 817 F.2d at 1555, and Wheeler has given no indication that the prosecutor failed to introduce evidence to which he referred, improperly questioned witnesses, or continually or repeatedly made improper references to Wheeler's character. Finally, the prosecutor's admission at closing that the government's witnesses were "bad people," albeit people Wheeler "chose to surround himself with," R44 at 10-11, was not improper because the statement was supported by evidence introduced at trial. See Tisdale, 817 F.2d at 1555.

Even if the district court committed plain error in admitting the prosecutor's statements or in failing to declare a mistrial sua sponte in this case, Wheeler has failed to demonstrate how the plain error affected his substantial rights. Wheeler argues that the prosecutor's statements resulted in a "miscarriage of justice" because he repeatedly ignored the district court's admonishments. Brief of Appellant at 17. In support of his argument, he cites only United States v. Crutchfield, 26 F.3d 1098, 1103 (11th Cir. 1994), in which we noted that "[r]eversal on the basis of prosecutorial misconduct requires that the conduct be so pronounced and persistent that it permeates the entire atmosphere of the trial." Id. at 1099 (citation and internal quotations omitted). Crutchfield is distinguishable from the instant case because there, the prosecutor's misconduct included actions

16

based on his strong personal interest in the case, multiple instances of improper and highly prejudicial questions in direct and cross-examinations, and repeated violations of the district court's evidentiary rulings. Id. at 1100, 1102. Wheeler has not alleged any misconduct rising to that level. Additionally, the district court instructed the jury before opening statements and closing arguments that the lawyers' statements were not evidence and that the jury's view of the evidence should control. See Rodriguez, 765 F.3d at 1560 (district court's cautionary instructions cured any error). Because we conclude that Wheeler has not proved that any misconduct permeated the entire trial, and that the district court cured any error by issuing cautionary instructions to the jury, Wheeler has not proved that any prosecutorial misconduct deprived him of a fair trial.

### III. CONCLUSION

Because the district court did not commit plain error in enhancing Wheeler's sentence based on judicially found facts or in failing to grant a mistrial sua sponte based on prosecutorial misconduct, we **AFFIRM**.